## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JUDITH TICHENOR, on behalf of herself and
all others similarly situated,

      Plaintiffs,

v.                                                                    Civ. No. 15-810 MV-LF

NEW MEXICO TITLE LOANS, INC.,
and COMMUNITY LOANS OF AMERICA,

      Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants New Mexico Title Loan, Inc.,

and Community Loans of America's ("Defendants") Motion to Compel Arbitration and to Stay

Proceedings and Memorandum in Support, filed September 15, 2015 [Doc. 4].   In response to

Defendants' motion, Plaintiff Judith Tichenor, on behalf of herself and all others similarly

situated ("Plaintiffs"), filed a Motion to Remand and for Costs and Memorandum in Support,

filed September 21, 2015 [Doc. 8].   The Court, having considered the motions, briefs, relevant

law, and being otherwise fully informed, finds that Plaintiffs' Motion to Remand and for Costs is

well taken and will be granted.   Having found that this Court lacks subject matter jurisdiction

over Plaintiffs' claims, the Court declines to consider Defendants' Motion to Compel

Arbitration.


## BACKGROUND

Defendant New Mexico Title Loans, Inc. is a New Mexico corporation with its principal

place of business in New Mexico.   It makes small loans to New Mexico consumers that carry

high interest rates and are secured by the title to each borrower's vehicle.   [Doc. 1-1 at 2].

1

Defendant Community Loans of America is the largest title lender in the United States and is the parent corporation of New Mexico Title Loans.   It is incorporated and has its principal place of business in Georgia.   [*Id*. at 3].   Plaintiff Judith Tichenor seeks to certify a class consisting of all New Mexico citizens who have received a loan from Defendants since August 15, 2009. [*Id*. at 34].

In sum, Plaintiffs claims arise from the allegations that Defendants make small loans to "financially desperate" individuals "who lack access to traditional credit" [*id*. at 11] by issuing loans that are "often structured . . . to ensure default."   [*Id*. at 12].   Defendants allegedly "perform minimal or no underwriting on their loans and thus make no meaningful inquiry into the ability of a borrower to repay the loan.   Instead, Defendants protect themselves . . . by lending a small amount of the resale value of the borrower's vehicle (40% or less) and repossessing the vehicle in the event of default."   [*Id*. at 12].   Defendants' title loans carry an interest rate between 300% and 600% APR, [*id*. at 13], with a term of approximately 30 days, and payments are generally due every two to four weeks.   [*Id*. at 13].   Plaintiffs allege that "most borrowers . . . pay back far more than [the anticipated credit costs] because, not surprisingly, they are unable to make the scheduled payment on the scheduled date."   [*Id*. at 17].   Plaintiffs also allege that "Defendants generally do not accurately inform potential borrowers of the cost of the loan offered" because, even if Defendants disclose the cost of credit "in the event the borrower is able to pay the full amount of the loan within thirty days," Defendants' disclosures do no warn of the potential costs of credit in the likely event the borrower is unable to make these payments.   [*Id*. at 21].   The repossession rate is allegedly high, peaking at 71.24% in 2008, [*id*. at 27], and Defendants themselves report that they do not return to borrowers all of the overage in excess of the amount owed on the loan recovered when

2

the vehicles are sold.   [*Id*. at 29–31].

Plaintiffs allege three violations of the New Mexico Unfair Practices Act ("UPA"), N.M.S.A. § 57-12-1 *et seq.*, and two claims under New Mexico Common Law.   Under the UPA, Plaintiffs claim first that "Defendants engage in a pattern of conduct that takes advantage of their customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree" and that "Defendants materially misrepresent to their customers the ease of paying off the loans, the risk of default, and the likely cost of the credit," in violation of N.M.S.A. §§ 57-12-2(E)(1) and 57-12-3.   [*Id*. at 40–42 (Count I)].   Second, Plaintiffs claim that "Defendants' loans result in a gross disparity between the value received by their customers and the price those customers pay," in violation of N.M.S.A. § 57-12-2(E)(2).   [*Id*. at 51 (Count II)].   Third, Plaintiffs claim that when repossessing a borrower's vehicle, "Defendants purposefully engage in conduct designed to ensure that the sale leaves virtually no surplus to return to the borrower," resulting in a "gross disparity between the price paid by the borrower (here, the borrower's vehicle) [sic], and the value received by that borrower," in violation of N.M.S.A. § 57-12-3.   [*Id*. at 59–61 (Count III)].

Counts IV and V allege common law contract claims arising from purported procedural and substantive unconscionability.   Plaintiffs' procedural unconscionability claim is based on the allegations that "Defendants conduct their business by way of contracts of adhesion, conduct no meaningful underwriting, and engage in business practices intentionally designed to trap their customers in a cycle of debt from which they cannot escape but that are highly profitable to Defendants."   [*Id*. at 63].   Plaintiffs' substantive unconscionability claim is based on the allegations that, "[g]iven the fact that Defendants' loans are oversecuritized, there is no justification . . . for the high interest rates Defendants' charge.   Defendants' amortization of

3

their loans in combination with the number of rollovers in which Defendants know or should know a typical borrower will engage guarantee that Defendants' borrowers receive very little value." [*Id*. at 66]. Further, "Defendants' repossession and resale practices are also substantively unconscionable because they deprive their borrowers of any fair portion of the value of the borrowers' vehicle." [*Id*. at 67].

Plaintiffs filed their Complaint in the First Judicial District of New Mexico on August 31, 2015. [Doc. 1-1]. Defendants filed a Notice of Removal on September 15, 2015, [Doc. 1], and on the same day filed a Motion to Compel Arbitration and to Stay Proceedings, [Doc. 4]. Plaintiffs now move this Court to remand the entire suit to the First Judicial District Court of New Mexico and impose an award of attorneys' fees and costs for the litigation associated with removal, arguing that the case patently does not present a federal question. [Doc. 8]. Defendants timely responded to Plaintiffs' motion, [Doc. 13], and ask this Court to find subject matter jurisdiction, compel arbitration, and stay proceedings.

## DISCUSSION

Because the Court cannot consider Defendants' Motion to Compel Arbitration unless it has subject matter jurisdiction, the Court considers first Plaintiffs' Motion to Remand and finds that because Plaintiffs neither plead violations of federal law nor raise any substantial federal issue, this Court lacks subject matter jurisdiction over Plaintiffs' claims. Because Defendants did not have an objectively reasonable basis for arguing removal, the Court awards attorneys' fees and costs.

**I.   State Court Removal and Federal Question Jurisdiction**

It is a foundational premise of American federalism that "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks omitted). Accordingly, the

statutory right to remove cases over which the district courts have original jurisdiction must be construed in concert with the "presumption against removal jurisdiction, which the defendant seeking removal must overcome." *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1222 (D.N.M. 2013) (Browning, J.). *See also Becker v. Ute Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) ("Indeed, '[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Ordinarily, defendants seeking to remove an action to federal court must rely either on the district courts' jurisdiction over cases involving a complete diversity of citizenship or over suits arising under the laws of the United States. *See* 28 U.S.C. §§ 1331, 1332. The Defendants here, however, rely on an "exceedingly narrow" and relatively arcane "branch of federal question jurisdiction" known as "substantial question" jurisdiction that has been applied only to a "special and small category of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (internal quotation marks omitted). In such cases, "even though a plaintiff asserts only claims under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues." *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (*en banc*). Importantly, however, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). In determining whether a civil action poses a "substantial question" of federal law, the party invoking the jurisdiction of a United States district court must show that "a federal issue is: (1) necessarily raised, (2) actually

5

disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."   *Gunn*, 133 S. Ct. at 1065 (citing *Grable*, 545 U.S. at 313–14).   The Court will evaluate each of Plaintiffs' claims in turn.

      A.    <u>Unfair Practices Act Claims</u>

Counts I, II, and III of Plaintiffs' Complaint allege violations of the New Mexico UPA. The UPA prohibits "unconscionable trade practices," defined as any "trade practice" that "takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree."   N.M.S.A. § 57-12-2(E)(1).   The UPA also prohibits extension of credit that "results in a gross disparity between the value received by a person and the price paid."   § 57-12-2(E)(2).   The New Mexico Supreme Court sets forth the following elements of a UPA violation:   (1) an "oral or written statement, visual description or other representation that was false or misleading," (2) "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts," (3) that occurred in the regular course of business, and (4) that was the type that "may, tends to or does, deceive or mislead any person."   *Ashlock v. Sunwest Bank of Roswell*, 753 P.2d 346, 347 (N.M. 1988), *rev'd on other grounds by Gonzales v. Surdigev Corp.* 899 P.2d 576 (N.M. 1995).

Defendants make two arguments in support of federal question jurisdiction.   First, Defendants argue that although Plaintiffs do not expressly plead violations of federal law, certain allegations state violations of Defendants' obligations under the Truth In Lending Act ("TILA"),[1] 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226.1 *et seq.*, and that

---

[1] The principal purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost, "so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."   15 U.S.C. § 1601(a).

Plaintiffs cannot avoid federal jurisdiction merely by choosing not to plead a federal cause of action.   [Doc. 13 at 2–7 (citing Doc. 1-1 at 21, 42, 44, 48, 66)].   In taking this position, Defendants misconstrue Plaintiffs' claims, which are not based on alleged violations of federal law and refer to TILA and Regulation Z only in passing.   For example, paragraph 21 of the Complaint alleges *possible* violations of TILA and Regulation Z but, contrary to Defendants' assertions that Plaintiffs have attempted to allege federal law violations without pleading a federal cause of action, Plaintiffs specifically state that Defendants engage in illegal conduct even if they comply with federal law:

> "Defendants generally do not accurately inform potential borrowers of the cost of the loan offered.   Interest rates are often quoted in monthly, not annual, terms, and *even when annual interest rates are provided (in accordance with the Truth in Lending Act*, 15 U.S.C. §§ 1601 to 1667, *and Regulation Z* promulgated thereunder, 12 C.F.R. §§ 226.6 and 226.17), the context in which they appear is calculated to minimize their impact.   For example, Defendants provide 'consumer disclosures' on their websites that emphasize the cost of credit in the event the borrower is able to pay the full amount of the loan within thirty days. The disclosures do not provide the cost of credit in the event the borrower rolls the loan over one or more times or attempts to refinance the loan after making one or more payments on it."

[Doc. 1-1 at 21 (emphasis added)].

Defendants also argue that some of Plaintiffs' allegations "track the precise language from TILA and Regulation Z," rather than the elements of a UPA violation, and that Plaintiffs "now attempt to cloak all of these verbatim federal allegations under state law."   [Doc. 13 at 4]. Defendants cite *Plummer v. Winfield*, Civ. No. 09-444 JCH/DJS, Doc. 18 at 3 (Dec. 4, 2009) (Herrera, J.), in which Judge Herrera finds that the plaintiff's claim arises under the federal constitution because her state law claim was based on an alleged fourth amendment violation under the federal constitution.   The plaintiff in *Plummer* alleged that she had been strip searched at a detention center and cited the fourth amendment and the New Mexico Constitution

in support of her claim under the State Tort Claims Act.   *Id*. at 1–2.   The court reasoned that the plaintiff would have been able to avoid federal jurisdiction if she had "stated a claim only for violation of the New Mexico Constitution, or one for state law battery," but that because the complaint required an interpretation of the fourth amendment, the plaintiff "raised a question that demand[ed] interpretation of federal law."   *Id*. at 3.

Again, Defendants misread the allegations here, which do not require an interpretation of TILA or Regulation Z.   For example, paragraphs 42 and 44 of the Complaint allege that Defendants misrepresent "the likely cost of credit" and target consumers who will not understand "the cost of credit."   While the sections of TILA and Regulation Z cited by Defendants refer generally to the purpose of informing borrowers, particularly vulnerable borrowers, about the cost of credit (*See* 12 C.F.R. § 1026.1; 15 U.S.C. §§ 1601, 1605, 1665(a), 1637), Plaintiffs clearly allege that even if Defendants are disclosing the costs of credit in accordance with federal law, Defendants are nevertheless concealing from Plaintiffs the likelihood of defaulting and incurring substantially more costs.[2]   Furthermore, the New Mexico UPA also prohibits knowingly misleading borrowers and does not require a violation of TILA or Regulation Z.   *See Ashlock*, 753 P.2d at 347.   Because the allegations may support claims under the UPA without alleging violations of TILA or Regulation Z, this Court does not find that Plaintiffs have alleged TILA or Regulation Z violations in support of their UPA claims.   By alleging that the terms of Defendants' loans are designed to trap vulnerable borrowers into making perpetual payments on interest that "do not meaningfully reduce the principal of the loan," [Doc. 1-1 at 56], Plaintiffs

---

2 *See, e.g.*, Doc. 1-1 at 21 (discussed *supra*) and 18 (alleging that "[m]ost borrowers and class members are often left with no choice but to roll over the loan, and Defendants permit borrowers to roll over their loans as many times as the borrower requests to do so.   As a general matter, after a borrower has rolled a loan over three times, he or she has paid an amount of interest equal to the amount he or she borrowed without having touched the principal of the loan at all.").

allege predatory lending practices that do not depend on failing to disclose the likely cost of credit, and these allegations of "unconscionable trade practices" naturally arise out of New Mexico's UPA protections.    Therefore, because Plaintiffs' UPA claims do not require interpretation of federal law, *Plummer* is inapposite and Defendants have not overcome the presumption against removal.

Second, Defendants argue that even if the Complaint does not plead violations of federal law, it still presents substantial federal questions that must be resolved by this Court under *Grable*.   [Doc. 13 at 7–10].   The Court rejects this argument because again, as Plaintiffs allege, Plaintiffs' UPA claims could be satisfied without finding a violation of Defendants' obligations under TILA and Regulation Z.   The Court interprets Plaintiffs' allegations, particularly paragraph 21 of the Complaint, as going beyond the requirements of TILA and Regulation Z, making the allegations of possible federal violations one of multiple theories of liability under UPA.   Where a claim is supported by alternative theories, federal courts do not have jurisdiction unless federal law is essential to each theory.   *Russo v. Ballard Medical Products*, 550 F.3d 1004, 1009–10 (10th Cir. 2008) (quoting *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 810 (1988) ("a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories")); *see also Rains v. Criterion Sys. Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (finding that federal law does not attach when federal law is not a necessary element of the claim (citing *Christianson*)).

In sum, to the extent the Complaint implicates federal disclosure requirements, "it is only as factual allegations that, in part, could give rise to violations of the UPA."   *See New Mexico v. ITT Educational Servs., Inc.*, Civ. No. 14-0321 KG/KK, Doc. 25 at 3 (June 30, 2015) (Gonzales,

J.) (submitted in support of Doc. 8 as Ex. 1).   In *ITT*, Judge Gonzales ruled that although the plaintiff's complaint alleged inaccurate TILA disclosures, the plaintiff's UPA and New Mexico common law claims did not arise from federal law.   *Id*.   Judge Gonzales emphasized that "there could be a violation of the New Mexico UPA independent of a finding that either" TILA disclosures were or were not properly made.   *Id*.   This Court finds Judge Gonzales's reasoning persuasive because Plaintiffs here similarly have alleged possible TILA violations that are not necessary to their UPA claims.   Again, Plaintiffs allege that even if Defendants disclosed the annual interest rate and cost of credit in accordance with federal requirements, the disclosures are nevertheless misleading in light of Defendants' overall scheme that puts financially vulnerable borrowers at a severe disadvantage.   [Doc. 1-1 at 21].

Because federal issues under TILA or Regulation Z are not necessary to Plaintiffs' UPA claims, Defendants fail to overcome the presumption against removal jurisdiction.   *Gunn*, 133 S. Ct. at 1065.

        B.    <ins>New Mexico Common Law Claims</ins>

The Supreme Court of New Mexico has consistently held that procedural unconscionability "goes beyond the mere facial analysis of the contract and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other."   *Cordova v. World Finance Corp. of NM*, 208 P.3d 901, 907–08 (N.M. 2009).   Substantive unconscionability "concerns the legality and fairness of the contract terms themselves; the substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns."   *Id*. at 907.

In light of the plain similarities between these claims and Plaintiffs' UPA claims, the Court will not retrace its analysis.   Rather, it is sufficient here to underscore both that Plaintiffs may recover on their procedural and substantive unconscionability claims without reliance on any federal law, and that any incidental reference to a federal standard would not create a substantial issue of federal law implicating *Grable*.

## II.   Attorneys' Fees and Costs

Plaintiffs contend that Defendants should be required to pay Plaintiffs' costs and fees in connection with the present motion to remand because "Plaintiffs have, through the uncomplicated and straightforward mechanism of a state court lawsuit, sought to vindicate only state law claims."   [Doc. 8 at 14].   Plaintiffs further assert that "Defendants—without any apparent irony, even in light of the strained construction their removal necessarily gives to the complaint—have contended that Plaintiffs artfully drafted that complaint to avoid federal jurisdiction."   [*Id*.].

The statute broadly authorizes an award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" where a district court finds that remand is warranted.   28 U.S.C. § 1447(c).   However, the Supreme Court has held that although the text of the statute is permissive, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.   Conversely, when an objectively reasonable basis exists, fees should be denied."   *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).   As the Supreme Court there explained, "assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff."   *Id.* at 140.   Further, a

11

plaintiff need not show bad faith on the part of the defendant to win attorney's fees.   *See Topeka Hous. Auth. v. Johnson*, 404 F.3d 1245, 1248 (10th Cir. 2005).

Here, the Court finds that Defendants' removal was objectively unreasonable. Plaintiffs' Complaint states on its face that it raises issues of state law that do not depend on finding a violation of federal law, though such violations may have occurred.   This blatant misconstruction of the Complaint is suspicious in light of Defendants' intention to move to compel arbitration.   The Court therefore will order Defendants to pay Plaintiffs for attorneys' fees and costs incurred related to the instant motion to remand.

## **CONCLUSION**

For the foregoing reasons, IT THEREFORE IS ORDERED that the Motion to Remand and for Costs and Memorandum in Support, filed September 21, 2015, [Doc. 8], is granted. This matter is remanded to the First Judicial District Court of New Mexico.   Because this Court does not have subject matter jurisdiction, it will not consider Defendants' Motion to Compel Arbitration and Stay Proceeding, [Doc. 4].[3]

It is further ordered that that, within seven days of the entry of this Order, Plaintiffs shall file an affidavit outlining their expenses as described above.   Defendants' objections to the amount claimed by Plaintiffs, if any, shall be filed within seven days of the filing of the affidavits.

---

3  Plaintiffs' Motion for Leave to File Surreply and Memorandum in Support, filed October 8, 2015 [Doc. 19] is now moot.

Dated this 2nd day of May, 2016.

_____

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Scott Fuqua                                    Justin D. Rodriguez, *et al*.
Fuqua Law & Policy, P.C.                       Atkinson, Thal & Baker, P.C.
*Attorney for Plaintiffs*                      *Attorney for Defendants*